WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Casondra Kelsay,

    Plaintiff,

v.

Carolyn W. Colvin,

    Defendant.

No. CV-15-00223-PHX-GMS

**ORDER**

  Pending before the Court is the appeal of Plaintiff Casondra Kelsay, which challenges the Social Security Administration's decision to deny benefits. (Doc. 13.) For the reasons set forth below, the Court vacates that decision and remands for further consideration.

## BACKGROUND

  On July 8, 2011, Kelsay filed an application for supplemental security income, alleging a disability onset date of December 31, 2005. (Tr. 174.) After Kelsay's claim was denied initially and on reconsideration, she requested a hearing, which the ALJ held on June 27, 2013. (Tr. 41-65.) At the hearing, Kelsay's disability onset date was amended to May 19, 2011. (Tr. 45.) On August 30, 2013, the ALJ issued a decision finding Kelsay not disabled. (Tr. 22-38.)

  In evaluating whether Kelsay was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (*Id.*) At step one, the ALJ determined

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

that Kelsay "has not engaged in substantial gainful activity since May 9, 2011, the amended alleged onset date." (Tr. 27.) At step two, the ALJ determined that Kelsay suffered from the severe impairments of chronic pain syndrome, lumbago status post osteomyelitis and shunt, degenerative disc disease, blind in left eye, borderline diabetes, bronchitis and lupus. (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (Tr. 28.)

At that point, the ALJ made a determination of Kelsay's residual functional capacity ("RFC"),[2] concluding that Kelsay could "perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)." (Tr. 28.) The ALJ thus determined at step four that Kelsay could perform her past relevant work as a telemarketer. (Tr. 32.) Thus, the ALJ did not proceed to step five. Given this analysis, the ALJ concluded that Kelsay was not disabled. (Tr. 33.)

The Appeals Council declined to review the decision. (Tr. 1-6.) Kelsay filed the complaint underlying this action on February 9, 2015, seeking this Court's review of the

---

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by her impairments. *See* S.S.R. 96-8p (July 2, 1996).

ALJ's denial of benefits.[3] (Doc. 1.) The matter is now fully briefed before this Court. (Doc. 13, 17, 18.)

## DISCUSSION

### I. Standard of Review

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial" evidence amounts to "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

Here, Defendant Commissioner of Social Security concedes that the ALJ erred in evaluating Kelsay's application. (Doc. 17 at 2.) The parties disagree only as to whether the Court should remand for further proceedings or for an award of benefits. As such, the sole issue before this Court is remedy.

### II. Remedy

Kelsay requests that the Court remand her case for an award of benefits. (Doc. 13 at 10-11.) Remanding for an award of benefits is proper in certain circumstances pursuant to the Ninth Circuit's "credit-as-true rule," under which the Court should remand for benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If these three criteria are

---

[3] Kelsay has authority to file this action pursuant to 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

- 3 -

1 satisfied and the Court determines that "the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding," the Court may exercise its "discretion to depart from the ordinary remand rule." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Ninth Circuit precedent "foreclose[s] the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful purpose' under the first part of credit-as-true analysis." *Id.* at 1021; *see also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the [ALJ] to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."). Therefore, "where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the [improperly discredited evidence] were credited," a reviewing court "will not remand solely to allow the ALJ to make specific findings regarding that [evidence]." *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

Nonetheless, any "significant factual conflict in the record . . . should be resolved through further proceedings on an open record before a proper disability determination can be made." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495-96 (9th Cir. 2015). Courts must "assess whether there are outstanding issues requiring resolution *before* considering whether to hold that the claimant's testimony is credible as a matter of law." *Id.* at 1105; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5, 2016) ("If the district court does determine that the record has been fully developed, *and there are no outstanding issues left to be resolved*, the district court must next consider [the third step of the credit-as-true analysis]." (emphasis added) (citations omitted)). A significant factual conflict is an outstanding issue requiring resolution through further proceedings. *Treichler*, 775 F.3d at 1101 ("Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate.").

The credit-as-true rule should not be applied where "the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his [or her] testimony and the medical evidence in the record." *Treichler*, 775 F.3d at 1105. In *Brown-Hunter*, the Ninth Circuit determined that a remand for benefits was inappropriate where medical records undermined the claimant's allegations that her pain was debilitating: "Although medical reports of adequate pain control on medication do not foreclose the possibility that" a claimant's pain is as debilitating as alleged, such reports "do create a significant factual conflict in the record that should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." 806 F.3d at 496.

Here, both Kelsay and Defendant Commissioner agree that "the ALJ did not adequately consider the credibility of [Kelsay's] allegations." (Doc. 17 at 5.) Kelsay testified to a level of pain so debilitating that she could not work. In response to the ALJ's questions at the hearing on June 27, 2013, Kelsay testified that her most disabling medical problem was her lupus and accompanying joint pain, as well as her back pain, which extends down into her left buttock and into her left leg. (Tr. 47-48.) Kelsay also noted that she is blind in her left eye. (Tr. 48.) Kelsay testified that she can be on her feet for ten to fifteen minutes, that she can sit for thirty to forty-five minutes, that she can lift five to ten pounds and can carry a gallon of milk across the kitchen, that she can bend but tries to avoid doing so because it causes back pain, and that she cannot kneel or squat. (Tr. 49-50.) Kelsay testified that her pain is predominately on the left side of her body but sometimes also on the right, although the left side hurts more. (Tr. 51.) She testified that bending, cleaning, too much walking, sitting too much, and lifting something heavy will make the pain flare up. (Tr. 51-52.) She attempts to manage her pain by getting up if she's sitting down, walking around, and taking medications, but "the pain comes right back." (Tr. 52.) Kelsay testified that her lupus causes her to be "always in pain" and "weak," as well as "sick all the time." (*Id.*) She added that she is very limited in what she can do. (*Id.*)

1    In response to questions from her attorney at the hearing, Kelsay testified that at
2 her last job—a part-time position where she worked four hours per day—she had
3 difficulties and had to take more breaks than her employer allowed, at least five breaks
4 lasting fifteen minutes at a time, during which she would alternate walking around and
5 reclining with her feet up. (Tr. 53-54.) She rated her back pain on a scale of one to ten as
6 "at least a seven to eight, all the time." (Tr. 58.) She also testified that, as a side effect
7 from one of her medications, Prednisone, she has headaches at least three times per day
8 for thirty minutes to an hour per occurrence which cause her to put her head down, close
9 her eyes, or put a hot rag over her eyes. (Tr. 54-55.) She further testified that she
10 experiences severe headaches if she strains her right eye (the one in which she has vision)
11 by reading small print or looking at a computer screen for longer than an hour. (Tr. 58-
12 59.) She treats these headaches with medication and by resting her eye for at least an
13 hour or two before she can read or view a computer screen again. (Tr. 59.) Regarding
14 her lupus, Kelsay testified that she experiences flares two to three times per week,
15 sometimes lasting all day, and that a flare entails breaking out in hives and joint swelling,
16 as well as weakness and sickness. (Tr. 56.) She testified that her children help her with
17 cooking and cleaning, that her contributions to household chores take an inordinate
18 amount of time to complete, that she sometimes needs help putting shoes and pants on
19 (her mother lives with her), and that she is unable to grocery shop on her own because the
20 bending and reaching causes too much pain. (Tr. 59-60.)

21   The vocational expert testified that assuming Kelsay's testimony is believed, there
22 is no work she can perform. (Tr. 63.) In reaching a conclusion to the contrary, the ALJ
23 determined that Kelsay's "statements concerning the intensity, persistence and limiting
24 effects of these symptoms are not entirely credible." (Tr. 29.) However, the ALJ failed
25 to provide "specific, clear and convincing reasons" for this determination, and therefore
26 the ALJ's decision must be vacated. *Brown-Hunter*, 806 F.3d at 493. Nonetheless, the
27 record contains medical reports in which the limitations doctors gave to Kelsay suggest a
28 level of functionality inconsistent with Kelsay's allegations regarding the intensity of her

pain, and these are the kinds of inconsistencies that "should be resolved through further proceedings on an open record." *Id.* at 496.

The report of A. Gomez, MD, dated October 24, 2011, noted that Kelsay's past medical history includes "[b]lindness in the left eye which is congenital, lupus and diabetes mellitus diagnosed this year, and arthritis in the lower back." (Tr. 376.) Kelsay's listed medications included Percocet, ibuprofen, a headache medication, Baclofen, and gabapentin. (*Id.*) Dr. Gomez indicated that Kelsay "began to cry following gait/station exam, reportedly due to low back pain from the various tasks performed," and the doctor concluded that she "appears to have discomfort with use of her lower back, but otherwise shows minor limitations at this time." (Tr. 377-78.) Dr. Gomez opined that based on his medical assessment (not on Kelsay's statements of what she can do), Kelsay has limitations that would continue for twelve consecutive months, including restrictions on lifting and walking due to lumbar arthritis and low back pain, with no limitations on sitting. (Tr. 379-80.) Dr. Gomez's restrictions on lifting and walking would not preclude Kelsay from performing sedentary work. The ALJ assigned "some limited weight to Dr. Gomez's opinion," finding that it did not adequately account for Kelsay's vision problems. (Tr. 30.)

The report of Mark Binette, MD, dated August 24, 2012, detailed that Kelsay "states that she has a sharp pain in her lumbar back that radiates into her left buttock" and that she "continues to be in pain management on medications, which she states does not help." (Tr. 483.) He noted that Kelsay "was diagnosed with lupus in 2011" and that she "said that this causes her to be fatigued and have whole body muscle and bone aches and pains. She states that it hurts so much that she has a hard time breathing and just has total general malaise." (*Id.*) During the "straight leg raising" exam, Kelsay reported the "sharp pain in her lumbar back radiated into her left buttock." (Tr. 486.) Dr. Binette identified Kelsay's diagnoses as "chronic back pain" and "lupus." (*Id.*) Nonetheless, Dr. Binette opined (checking a box) that Kelsay's condition would not "impose any limitations for 12 continuous months." (*Id.*) The ALJ assigned "no weight" to Dr.

Binette's opinion. (Tr. 30.)

These medical reports suggest that the physicians who drafted them believed Kelsay's pain to be less severe and less limiting than Kelsay's testimony suggests. The doctors did not find Kelsay's pain to be so limiting as to preclude her from working.

Because the record is not "free from conflicts, ambiguities, or gaps," the Court remands for further consideration, rather than for benefits. *Treichler*, 775 F.3d at 1103.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **VACATED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** for further proceedings. The Clerk of Court is directed to enter judgment accordingly.

Dated this 4th day of April, 2016.

*[signature: G. Murray Snow]*

Honorable G. Murray Snow
United States District Judge